Exhibit A

Copy

After Recording Return To:
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

This Document Prepared By:
___Azra Habibija___

**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**
Signature _____

Tax Parcel No.:
_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: $103,000.00                                                        Loan No: ▮▮▮▮
New Money: $19,572.34                                                          Investor Loan No: ▮▮▮▮
                                                                                   MIN Number: ▮▮▮▮

# LOAN MODIFICATION AGREEMENT
(Providing For Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 15th day of June, 2015, between **GREGORY WILLIAMS** ("Borrower") and **NATIONSTAR MORTGAGE LLC**, whose address is **8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated _6-20-2015_, ____ and recorded in Book/Liber N/A, Page N/A, Instrument No: N/A, of the **Official Records (Name of Records) of _Jefferson_ County, KY (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**8220 ROCHELLE RD, LOUISVILLE, KY 40228**,
(Property Address)
the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

LOAN MODIFICATION AGREEMENT — Single Family—Fannie Mae Uniform Instrument        Form 3179 1/01 (rev. 4/14)
6300a 08/14                                                                                    (page 1 of 5)

1. As of **August 1, 2015**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$101,758.53**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **7.500%**, from **August 1, 2015**. Borrower promises to make monthly payments of principal and interest of U.S. **$669.64**, beginning on the **1st day of September, 2015**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **7.500%** will remain in effect until principal and interest are paid in full. If on **August 1, 2055** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of

Copy

law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for

such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

(g) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(h) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

6. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

7. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

8. This Agreement modifies an obligation secured by an existing security instrument recorded in County, KY, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $82,186.19. The principal balance secured by the existing security instrument as a result of this Agreement is $101,758.53, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
GREGORY WILLIAMS -Borrower

NATIONSTAR MORTGAGE LLC

By: _____ (Seal) - Lender
Name: Azra Habibija
Title: Assistant Secretary

_____
Date of Lender's Signature  6/29/15

_____  6/29/15
Azra Habibija
Mortgage Electronic Registration Systems, Inc - Nominee for Lender
Title: Assistant Secretary

Copy



# Check(s) Received

**Check #:** _____

**Check Amount:** _____

**ACH:** ☑

**Signed by:** _____/s/_____